UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RANDY ERICKSON,                                      Case No.    2:22-cv-00067

        Plaintiff,                                   Hon. Paul L. Maloney
                                                     U.S. District Judge

    v.

COUNTY OF GOGEBIC, et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

### I.  Introduction

This Report and Recommendation (R&R) addresses the motion for summary judgment filed by Defendant Voit, a retired Sheriff's Deputy and Corrections Officer at the Gogebic County Jail.   (ECF No. 94.)   Voit argues that he is entitled to qualified immunity.

The Plaintiff in this case – Randy Erickson – filed this civil rights action pursuant to 42 U.S.C. § 1983 based on events that occurred while he was incarcerated in the Gogebic County Jail on February 18, 2020.   (ECF No. 1.)   Erickson was serving a sentence after being convicted of operating a motor vehicle while intoxicated.   Erickson alleges that Defendant Voit used excessive force against him by slamming his head into the jail cell floor and by kneeling on his head and/or neck. (*Id.*) Erickson also asserts that Defendant Voit refused to provide him with medical care after this incident.   (*Id.*)

Voit is the only remaining Defendant.   On December 11, 2023, this Court granted a stipulation and order to dismiss Defendants Gogebic County, Bucknell, and Jackovich from this lawsuit.   (ECF No. 126.)

Voit now moves for summary judgment, arguing that he is entitled to qualified immunity on Erickson's Eighth Amendment claims.   Voit argues that the jail security video shows that he could not have violated clearly established Eighth Amendment law.   Erickson argues that the clearly established Eighth Amendment law did not prohibit him from throwing Erickson to the ground as soon as Erickson failed to fully comply with his order to place both knees on the mat so that he could safely remove Erickson's handcuffs.   Voit also argues that he is entitled to qualified immunity on Erickson's claim that Voit denied him medical care in deliberate indifference to a serious medical need, because he only sustained bruising and a fractured rib, which resolved with rest and pain medication.   In the opinion of the undersigned, genuine issues of material fact exist regarding whether Voit violated clearly established Eighth Amendment law.   It is respectfully recommended that the Court deny Defendant Voit's motion for summary judgment.

## II.   Facts

### a.   Plaintiff's Factual Allegations

Erickson says that, on February 18, 2020, while he was confined in the Gogebic County Jail, Defendant Voit questioned him and his three cellmates about the trash outside their jail cell.   (ECF No. 1, PageID.3.)   Neither Erickson nor his cellmates

named the individual who had placed the trash outside the jail cell. (*Id.*) Voit cancelled visitation rights for Erickson and his three cellmates. (*Id.*)

Erickson says that he became upset because his visitors had already been waiting for one hour to see him. Erickson then kicked the jail door and dropped a "boat" (a portable jail bed enclosure) onto the ground. (*Id.*) Erickson picked up the "boat" and resumed playing cards with his cellmates. (*Id.*)

Voit asked Erikson if he needed a "time out." (*Id.*) Voit ordered Erikson to step outside the jail cell and to place his hands against the wall and then behind his back. (*Id.*, PageID.4.) Voit placed Erickson in handcuffs. (*Id.*) Voit escorted Erickson to another jail cell down the hall. (*Id.*) Erickson says that during the escort, Voit forcefully pulled on his handcuffs causing Erickson to lose feeling in his hands. (*Id.*) Erickson complained that the handcuffs were too tight and that he sustained injuries including bruising and marks on his wrists. (*Id.*)

When they reached the new jail cell, Voit told Erickson to kneel. (*Id.*) As Erickson attempted to comply, Voit grabbed Erickson and threw him face first to the floor. (*Id.*) Voit jumped on Erickson's back and placed him in a headlock. (*Id.*) While Erickson was still handcuffed, Voit pulled Erickson across the jail floor by his neck or head. (*Id.*) Erickson says that Voit jerked unnaturally and upward on his handcuffed arms, slammed his head into the wall, and smashed his face on the floor while pulling him across the jail floor by his head or neck. (*Id.*) Voit then forcibly kneeled on Erickson's neck and/or head while removing the handcuffs. (*Id.*) After

3

removing the handcuffs, Voit lifted his knee from Erickson's head and neck, and then left the cell.   (*Id.*, PageID.5.)

Erickson says that he was denied medical treatment for approximately 42 hours before he was taken to the hospital during the afternoon of February 20, 2020, when he was treated for serious and obvious injuries.   (*Id.*)

Defendant Voit was charged with criminal assault and battery due to his conduct in using force against Erickson.[1]   (*Id.*)   Erickson asserts that Defendant Voit used excessive force against him and acted with deliberate indifference to his serious medical needs in violation of his Eighth Amendment rights.   (*Id.*, PageID.6.)

### b.  Video Evidence

Defendant Voit provided jail security videos depicting the events.   (ECF No. 111 (flash drive).)   The first five videos show events on February 18, 2020, and have no sound.   The last video has sound and shows events on February 19, 2020. Exhibit 1 is a video of the cell Erickson shared with three other cellmates.   At approximately 7:10 PM, Erickson is observed walking to the cell door and repeatedly kicking the door.   (7:10:35 PM.)   Erickson then sits down at the table and begins playing cards with his cellmates.   Again, Erickson is observed walking to the cell door and repeatedly kicking the door.   (7:15:20 PM.)   After pacing in the cell, he then picks up a boat (a portable bed) and throws it to the floor.   (7:16:02 PM.) Erickson replaces the boat against the wall.   (7:16:20 PM.)   Soon after, Officer Voit

---

[1]      Voit was acquitted of the charge by a jury.

opens the cell door.   (7:17:05 PM.)   Erickson is observed walking toward the door and out of the cell into the hall.   (7:17:18 PM.)

Exhibit 2 is a video in the hallway outside the shared cell.   Voit is observed opening Erickson's cell and Erickson walks out to the hallway.   (7:17:00 PM.) Erickson places his hands on the wall while standing and Voit handcuffs him behind his back without incident.   (7:17:23 PM.)   Voit escorts Erickson down the hallway and then stops near a wall.   (7:17:30-7:17:47 PM.)

Exhibit 3 is a video showing a hallway through which Voit escorted Erickson on the way to the holding cell.   Erickson is observed being escorted through a locked door without incident by Voit.   (7:17:57-7:18:16 PM.)

Exhibit 4 shows Voit escorting Erickson through a doorway held open by Deputy Bucknell, and into the holding cell.   (7:18:10-7:18:27 PM.)   Deputy Bucknell stands at the open door of the holding cell observing Voit and Erickson inside the cell. (7:18:29 PM.)   Deputy Bucknell then moves into the cell. (7:18:44 PM.)   Deputy Bucknell moves back into the hallway from the cell.   (7:19:35 PM.)   Voit walks into the hallway and locks the cell door.   (7:19:45 PM.)   Both Voit and Deputy Bucknell walk down the hallway away from the cell.   (7:19:47-7:19:50 PM.)

Exhibit 5 is a video from a camera inside the holding cell.   This is the video that shows the alleged excessive force.   Erickson enters the cell.   (7:18:28 PM.) Voit follows holding Erickson's handcuffs from behind Erickson.   (7:18:29 PM.) Erickson begins to kneel on the cell bench.   (7:18:30 PM.)   Erickson's left knee is on the bench kneeling and his right knee is partially on the bench with his right foot on

the ground.    (7:18:32 PM.)    Voit takes his hands off the handcuffs and begins looking at his own hands holding the cell door keys.    (*Id.*)   Voit pulls his right hand back toward his body and appears to clip the cell door keys to the right side of his pants.   (7:18:34 PM.)   Voit immediately uses both of his hands to grab Erickson's right arm.   (7:18:36 PM.)   Voit pulls Erickson to the cell floor.   (7:18:37 PM.)   Voit takes his right arm and pulls on Erickson's neck, putting him into a prone position, while using his left arm to hold Erickson's left handcuffed arm.   (7:18:38-7:18:40 PM.)   Voit, now on his knees, struggles to lay Erickson onto the cell floor.   (7:18:41-7:18:48 PM.)   Deputy Bucknell enters the cell to assist and raises his right arm toward Erickson.   (7:18:49 PM.)   Deputy Bucknell backs off, standing over Voit and Erickson.   (7:18:53 PM.)   Voit places his right knee over Erickson's shoulder and neck area.   (7:18:58 PM.)   It appears that Voit removes keys from his shirt pocket. (7:19:02 PM.)   Voit removes the handcuffs from Erickson. (7:19:25 PM.)   Voit places the keys in his shirt pocket.   (7:19:30 PM.)   Voit places something into his left pant pocket.   (7:19:33 PM.)   Voit removes his knee from Erickson and gets up.   (7:19:38 PM.)   Voit leaves the holding cell while Erickson is still on the ground, and Erickson gets right up without issue.   (7:19:41 PM.)   Erickson looks at his wrist.   (7:19:48 PM.)    Erickson walks to the cell door and reaches for the door.   (7:19:57 PM.)

Exhibit 6 is a video of the hallway from outside the holding cell the next day. This is the only video with sound.   Sergeant (Sgt.) Trevor Jackovich[2] enters the holding cell and can be heard speaking with Erickson about the events of the previous

---

[2]    Excerpts from Sgt. Jackovich's deposition are located at ECF No. 94-6.

day.   Erickson indicates that he wanted to press charges against Voit.   Erickson stated he acted up because he thought it was unfair that Voit took away his visitation. Erickson eventually conceded for the most part that he acted inappropriately but insisted that Voit's conduct "was uncalled for."

### c.   Voit's Suspension and Reinstatement

Voit was suspended from the Sheriff's Department pending his assault and battery trial.   After Voit was acquitted of assault and battery, he was reinstated to the Gogebic County Sheriff's Department.   In his letter reinstating Voit, Sheriff Solberg wrote on March 11, 2022:

> On March 10, 2022, a jury of your peers found you NOT guilty of Assault and Battery MCL 750.81(1).  Undersheriff Cruz and I were present for your trial.  You based your defense on the fact that you followed department policy.
>
> Even though you were compliant with our department policy, it is my opinion you lacked the proper communication techniques and or de-escalation techniques. The video shows upon entering the holding cell, it was only a matter of seconds before Erickson was brought to the floor. Better communication and de-escalation techniques may have avoided this whole situation.
>
> This incident brought discredit by the community on the Gogebic County Sheriff's Office, Conduct Unbecoming (102.05.5).  To improve you communication and de-escalation techniques, I will require you to attend training within one calendar year.  Some of the training examples are "verbal judo" and or de-escalation training. While you were on suspension, Lucis Bucknell trained the rest of the department in de-escalation training during our defensive tactics.  You missed this training.  I will have you work with Undersheriff Cruz in finding an adequate training and location.

(ECF No. 114-16, PageID.2654.)

## III.   Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of*

*Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005).    The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

## IV.  Qualified Immunity

Defendant Voit argues that he is entitled to dismissal of the complaint against him based upon qualified immunity, because he could not have violated clearly established law.    "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).    Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741

(2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).    The analysis entails a two-step inquiry.    *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013).    First, the court must "determine if the facts alleged make out a violation of a constitutional right."    *Id.*    (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (1982)).    Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it."    *Id.* (citing *Pearson*, 555 U.S. at 232).    A court may address these steps in any order.    *Id.* (citing *Pearson*, 555 U.S. at 236).    A government official is entitled to qualified immunity if either step of the analysis is not satisfied. *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

In applying the first step of the qualified immunity analysis, a court must identify "the specific constitutional right allegedly infringed" and determine whether a violation occurred.    *Graham v. Connor*, 490 U.S. 386, 394 (1989).    The court considers the state of the law at the second step.    As the Supreme Court has observed, "this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate."    *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)).    As explained by the Supreme Court:

To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," *Hunter v. Bryant*, 502 U.S. 224, 228, (1991) (per curiam), which means it is dictated by

"controlling authority" or "a robust 'consensus of cases of persuasive authority,' " *al–Kidd*, *supra*, at 741–742 (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)).   It is not enough that the rule is suggested by then-existing precedent.   The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. *See Reichle*, 566 U.S., at 666.   Otherwise, the rule is not one that "every reasonable official" would know.   *Id.* at 664 (internal quotation marks omitted).

> The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). This requires a high "degree of specificity." *Mullenix v. Luna*, 577 U.S. ——, ——, 136 S.Ct. 305, 309, 193 L.Ed.2d 255 (2015) (per curiam). We have repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff*, *supra*, at 2023 (internal quotation marks and citation omitted). A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." *Anderson*, *supra*, at 641, 107 S.Ct. 3034. In the context of a warrantless arrest, the rule must obviously resolve "whether 'the circumstances with which [the particular officer] was confronted ... constitute[d] probable cause.'" *Mullenix*, *supra*, at 309 (quoting *Anderson*, *supra*, at 640–641, 107 S.Ct. 3034; some alterations in original).

*D.C. v. Wesby*, 138 S. Ct. 577, 589–90 (2018).

In the qualified immunity context, if the facts alleged and evidence produced, viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that the officer violated a clearly established constitutional right, dismissal by

summary judgment is inappropriate.    *Barton v. Martin*, 949 F.3d 938, 947 (6th Cir. 2020) (citing *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 400 (6th Cir. 2009)).

## V.  Eighth Amendment – excessive force

Voit argues that he is entitled to qualified immunity on Erickson's excessive force claim against him, because he did not violate clearly established law.    Voit further argues that the force that he used was reasonable and necessary under the circumstances.

To establish an Eighth Amendment claim, a plaintiff must satisfy both an objective and a subjective component.    *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 297-300 (1991).    "The objective component requires the pain inflicted to be 'sufficiently serious."    *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Wilson*, 501 U.S. at 298).    "The subjective component focuses on the state of mind of the prison officials."    *Williams*, 631 F.3d at 383.

While all Eighth Amendment claims involve an objective and a subjective component, the objective component is contextual and therefore varies depending on the claim asserted.    *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992).    The degree of harm necessary to satisfy the objective component depends on "contemporary standards of decency."    *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).    Not "every malevolent touch by a prison guard gives rise to an Eighth Amendment cause of action."    *Hudson*, 503 U.S. at 9.    But when prison or jail officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated, "[w]hether or not significant injury is evident."    *Id.*    In a use of force case

11

the Supreme Court requires a "more demanding subjective test but a more relaxed objective test." *Johnson v. Sootsman*, 79 4th 608, 615-616 (6th Cir. 2023). Thus, while the extent of an inmate's injury may help determine the amount of force used by the prison or jail official, it is not dispositive of whether an Eighth Amendment violation based on excessive force has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).

The essential inquiry for an Eighth Amendment excessive force claim is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986). "So even if an officer uses force because of an 'unreasonable' belief that it is necessary to restrain a prisoner, the officer does not violate the Eighth Amendment." *Sootsman*, 79 F.4th at 616. In making this inquiry, courts are guided by "factors [such] as the need for application of force, the relationship between the need and the amount of force that was used [and] the extent of injury inflicted." *Id.* at 320-21.

Voit argues that he did not violate clearly established Eighth Amendment law. Voit says that once Erickson refused to comply with the order to place both knees on the cell bench, so he (Voit) could safely remove the handcuffs, Erickson's noncompliance necessitated the use of force. Voit argues that authority supports his position. Voit cites *Griffin v. Hardrick*, 604 F.3d 949 (6th Cir. 2010) and *Burnett v. Griffith*, 33 F.4th 907 (6th Cir. 2022), as setting forth and confirming the clearly

established law that allows officers to "use significant force in response to a prisoner's resistance." (ECF No. 94, PageID.1466.)

*Griffin* involved a claim that two corrections officers used excessive force in violation of the Eighth Amendment.   The Sixth Circuit explained the incident:

> A security camera caught the incident on videotape. The video establishes that Griffin approached the nurse's station and remained there for just under 10 minutes, alternating between standing at the window and sitting in a chair placed by the station. She can be seen motioning and waiving her arms at various points throughout her conversation with the nurse. Hardrick walked toward Griffin and spoke with her for approximately 20 seconds before Rutledge approached the nurse's station and stood a few feet away from Hardrick and Griffin.
>
> After another 10 seconds, Griffin began to walk away from Hardrick, who then reached out to take her right arm. Griffin attempted to jerk her arm away, but Hardrick maintained his grip, and Rutledge stepped in to take Griffin's left arm. After a second or two of struggling with Griffin outside the nurse's station, Hardrick and Rutledge began to escort her down the hallway, ***which she resisted***.   Hardrick then stuck out his leg to trip Griffin. At this point, Griffin fell to the floor, and Rutledge tumbled on top of her.

*Id.* at 952 (emphasis added).   The Court considered the video tape evidence and the expert testimony indicating that Hardrick performed an appropriate leg-sweep maneuver that was necessitated by the circumstances, and affirmed the dismissal because no reasonable jury could find that Hardrick "evinced such wantonness . . . as is tantamount to a knowing willingness" to cause injury.   *Id.* at 956.

The Sixth Circuit in *Burnett* affirmed dismissal based upon qualified immunity because the officer did not have "fair warning that propelling a handcuffed prisoner to the floor, in response to the prisoner's attempt to break free, was 'an unreasonable method of regaining control of a prisoner in a [room] occupied only by other jail

13

officials.'"   *Burnett*, 33 F.4th at 912 (citing *Cordell v. McKinney*, 759 F.3d 573, 588

(6th Cir. 2014) (finding that officer who slammed handcuffed and restrained plaintiff

headfirst into a concrete wall was not entitled to qualified immunity)).   The Sixth

Circuit contrasted *Burnett* to the facts of *Cordell*:

> But unlike in *Cordell*, Burnett created an immediate exigency by pulling away from Sergeant Griffith in an attempt to break free from Sergeant Griffith's grasp. The act of breaking away from an officer's control is a far greater show of ***resistance*** than the act of turning toward an officer. Although Burnett was restrained by handcuffs with his arms behind his back, the video plainly establishes that Burnett was ***resisting control***, which was never the situation with Cordell. The fact that Cordell was always under control was a key consideration in this court's ultimate holding that a reasonable jury could find that the prison officer in that case used excessive force. *Id*. at 584–88.
>
> Another material fact that distinguishes *Cordell* from the present case is that, in the moments leading up to the use-of-force incident in *Cordell*, the prison officer and Cordell had engaged in a heated verbal exchange that caused the officer to display his taser in a threatening manner. *Id*. at 576–77. Sergeant Griffith, in contrast, did not display any aggression toward Burnett prior to Burnett's attempt to break free. Moreover, Sergeant Griffith did not receive a formal reprimand for his use of force, as did the officer in *Cordell*. *Id*. at 584.
>
> In sum, the contours of the fair-warning requirement that were satisfied in *Cordell* do not extend to the circumstances of Burnett's case. *Cordell* makes clear that the Eighth Amendment includes the right to be free from a jail official's use of excessive force against a compliant prisoner who is handcuffed and in an area of the jail where only other jail officials are present. Whether the prisoner is under control can thus be characterized as an important determinate of the right established by *Cordell*. *See id*. at 588.
>
> The video evidence here shows that Burnett ***was resisting control at the time that Sergeant Griffith used force to restrain*** him.

*Burnett*, 33 F.4th at 912–13 (emphasis added).

14

The Sixth Circuit held that the facts in *Burnett* established that the plaintiff's resistance justified the use of force.  The Sixth Circuit distinguished several cases where the use of force was unjustified because the plaintiff neither resisted nor posed a threat to the officers.  *Id.* at 913 (collecting cases).  But where the use of force was proportional to the need to forcibly bring an inmate under control, summary judgment is appropriate.  *Sootsman*, 79 F.4th at 620 (collecting cases) (granting summary judgment to officer who used the amount of force necessary to gain control and handcuff the inmate).  These cases establish that summary judgment is not appropriate if there is a factual dispute regarding whether the plaintiff resisted the officer at the time the force was used.  *See Smith v. Stoneburner*, 716 F.3d 926, 934 (6th Cir. 2013) (noting that the plaintiff and defendants' "dueling accounts" created a genuine issue of material fact as to whether the plaintiff resisted, but that if he did resist, "the officer's force my well have been reasonable.")

Erickson testified in his deposition:

```
11     A    I said, "No, I need my fucking visits.  I didn't
12          do anything wrong."  He said, "Step out."  I
13          stepped out.  He said, "Put your hands on the
14          wall."  I put my hands on the wall.
15     Q    Okay.  And then what?
16     A    Then he put my hands behind my back and he
17          handcuffed me and he brought me to the bubble,
18          drunk tank, whatever you call it.
19     Q    Okay.  And then what?
20     A    Then I got to the drunk tank.  And he asked me to
21          kneel down, so I kneeled down.  And then he asked
22          me to kneel down again.  And I'm like, I'm
23          already kneeling down, so I kneeled my head down,
24          because the wall, and the distance from my body
25          to the wall, I can't kneel all the way on the
```

```
 1                    ground.
 2      Q    Okay.  And then what happened?
 3      A    Then he picked me up and threw me in a circle and
 4           slammed me down and dropped his knee.
 5      Q    What did he do with his knee?
 6      A    Dropped it down onto my back.
 7      Q    Okay.  One knee or both knees?
 8      A    One knee.
 9      Q    Okay.  And then what happened?
10      A    Then he asked me not to move; said that he was
11           going to remove the cuffs, not to move until he
12           removes the cuffs, which I did.
13      Q    Okay.  So you stopped moving, and then he was
14           able to remove the cuffs?
15      A    I wasn't moving anyways.
16      Q    And why is that?
17      A    What do you mean?
18      Q    You said "I wasn't moving anyways."  I'm asking
19           you why you weren't moving?
20      A    I wasn't moving because he was on top of me.
21           Like I wasn't moving, period.  I always did
22           everything he asked me to do.
```

(ECF No. 9-3, PagID.1488-1489.)

Deputy Bucknell testified that Voit asked Erickson to kneel at least three times.   (ECF No. 94-4, PageID.1522.)   Deputy Bucknell stated that he saw Erickson "partially kneel down" but that Voit was blocking his view of Erickson.   (*Id.*)

Voit testified that he had told Erickson, in the hallway while he was escorting him to the holding cell, that he wanted Erickson to get down on the mat on his knees and that he would uncuff him if he cooperated.    (ECF No. 94-5, PageID.1539.) When they entered the holding cell, Voit says that he told Erickson a second time to get down on his knees on the mat.    (*Id.*, PageID.1540.)    Voit says he then told Erickson to get both knees all the way down.    (*Id.*, PageID.1541.)    Voit says that he gave Erickson "three quick commands."    (*Id.*)    As soon as Erickson did not comply with the third order, Voit says he put the cell block key in his pocket and "threw him down to the floor." (*Id.*)

Voit concedes that Erickson had not "threatened him in any way."    (*Id.*)    Voit further concedes that Erickson did not physically resist until after he had thrown him to the floor.    (*Id.*, PageID.1543.)    Voit discussed why it was important for Erickson to have his knees on the mat before he took off the handcuffs.    Voit testified:

```
 5   Q.   Can you tell me why it was important to you, as a CO, to make
 6        sure that Mr. Erickson had both knees on the ground on the
 7        mat, whatever, before you could remove his handcuffs?
 8   A.   It puts him in a more vulnerable position, gives me more
 9        reaction time to react once the cuffs are removed.
10   Q.   Okay.  So was an element of officer safety part of the
11        decision to make sure that the inmate is on both knees before
12        the cuffs are removed?
13   A.   Most certainly.
```

(ECF No. 94-5, PageID1547.)   Voit says that he believed that Erickson was visibly agitated, his fists were clenched, his muscles were tense, his jaw was fixed, and his veins were bulging.   (*Id.*, PageID.1548.)   Voit felt that under these circumstances it was safer to remove the handcuffs with either both knees on the mat or on the ground.[3]   (*Id.*, PageID.1459.)

In the opinion of the undersigned there exists a genuine issue of material fact regarding whether Erickson was resisting Voit and whether force was necessary at the time that Voit threw Erickson to the ground.   Erickson testified that he was not resisting and that he was complying with Voit's order to place his knees down to the best of his ability.   The video shows that Erickson's left knee was fully on the mat on the bench and that his right knee was partially on the mat.   The video of the incident does not appear to support Voit's assertion that Erickson was agitated, his fists were clenched, his muscles were tense, his jaw was fixed, and his veins were bulging.   Although Voit characterizes Erickson's injury as minor and superficial, Voit concedes that Erickson sustained bruises and a fractured rib.[4]   (ECF No. 94, PageID.1460.)

---

[3]     Sgt. Jackovich testified that there are different ways to remove handcuffs from inmates.   "You can have them kneel down on a bench or floor, having them lie down in a prone position, having them back up to the slot in a door, once the door is closed, remove them like that or if just they're standing."   (ECF No. 94-6, PageID.1570.)

[4]     Erickson says that he sustained injuries that include a fractured rib, back contusion, several loose and chipped teeth, jaw pain, persistent right wrist pain, shoulder pain, decreased range of motion in his right shoulder, narrowing of the acromioclavicular joint and sclerosis of the humeral head.   (ECF No. 114, PageID.2129-2130.)

Further, Voit testified that Erickson did not threaten him.   The video shows that Erickson at least appeared cooperative when Voit removed him from the shared jail cell and placed him in handcuffs, and during the escort through locked doors and hallways into the holding cell.   The escort appeared routine and without incident up to the point that Erickson began to kneel on the mat in the holding cell.   In the opinion of the undersigned, a question of fact exists precluding summary judgment. A reasonable jury could conclude that the force Voit used was malicious and sadistic for the very purpose of causing harm in violation of clearly established Eighth Amendment law; or, alternatively, a jury could conclude that the facts establish that force was necessary and reasonable under these circumstances.

## VI.   Eighth Amendment – deliberate indifference

Voit also argues that he is entitled to qualified immunity on Erickson's Eighth Amendment claim that Voit was deliberately indifferent to a serious medical need, because the alleged delay in treatment did not result in a "substantially serious risk of harm."   (ECF No. 94, PageID.1476.)   Voit argues that Erickson's injuries, which included only bruises and a fractured rib, healed without any treatment.   (*Id.*) Further, Voit argues that no evidence exists to support a conclusion that he consciously disregarded a risk of serious harm to Erickson.   (*Id.*, at 1477)

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as the failure to provide such care would be inconsistent with contemporary standards of decency.   *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976).   The Eighth Amendment is violated when a prison official is deliberately

20

indifferent to the serious medical needs of a prisoner.   *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component.   *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).   The subjective component requires an inmate to show that a prison official has "a sufficiently culpable state of mind in denying medical care."   *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834).   Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."   *Id.*   Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."   *Id.* at 837.

To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious.   *Id.*   In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.   *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008).   Obviousness, however, is not strictly limited to what is detectable to the eye.   Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if

21

informed of the true medical situation, would deem the need for medical attention clear.  *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014)

Erickson was examined by an Emergency Room physician on February 20, 2020.  (ECF No. 94-7, PageID.1594.)   Erickson was diagnosed with a fractured rib and a deep bruise in his back.  (*Id*.)   The physician testified during the criminal trial that the bruise would resolve on its own and the rib fracture required only rest and Ibuprofen.  (*Id*.)   This Court previously rejected Voit's argument that Erickson did not have serious injuries based upon the criminal testimony of the emergency room physician.  (ECF No. 44, PageID.704-705 (R&R on Voit's motion to dismiss) adopted by ECF No. 50 (Order Approving R&R).)

The video shows that after the encounter, Voit immediately left the holding cell while Erickson was still on the ground where Voit had thrown him.   Voit never checked to see if Erickson had sustained any injuries.   He quickly locked the cell door and walked away.   In the opinion of the undersigned, this is a close question. But, under the circumstances where Erickson did sustain injuries solely due to Voit's take down and the ensuing scuffle, a genuine issue of material fact exists whether Voit was deliberately indifferent to Erickson's serious medical needs.   As set forth above, a question of fact exists regarding whether Voit acted maliciously and sadistically for the purpose of causing harm.   If a jury determines that Voit acted with this requisite intent to cause harm, a jury could determine that Voit knew his conduct could cause harm that required medical attention and he purposely ignored Erickson's injuries.

## VII.    Recommendation

It is respectfully recommended that the Court deny Defendant Voit's motion for summary judgment based upon qualified immunity.

NOTICE TO PARTIES:    Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.    28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).    Failure to file timely objections constitutes a waiver of any further right to appeal.    *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).    *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:    January 24, 2024                    /s/ *Maarten Vermaat*
                                           MAARTEN VERMAAT
                                           U.S. MAGISTRATE JUDGE